# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
**JUDGE**

April 20, 2006

Edward V. Cattell, Jr.
Hollstein, Keating, Cattell, Johnson & Goldstein, P.C.
Willow Ridge Executive Office Park
750 Route 73 South
Sute 301
Marlton, NJ 08053

    (*Counsel for Plaintiff Hudson Marine Mgmt. Servs.*)

Jack A. Greenbaum
Healy & Baillie, LLP
61 Broadway
32nd Floor
New York, NY 10006-2701

    (*Counsel for Defendants Thomas Miller (Miami) Inc. and Thomas Miller P&L Ltd.*)

Steven Lawrence Menaker
Chasan, Leyner, Bariso & Lamparello, P.C.
300 Harmon Meadow Boulevard
Secaucus, NJ 07094

    (*Counsel for Defendant Sea Byte, Inc.*)

    **RE:    Hudson Marine Mgmt. Servs., Inc. v. Thomas Miller (Miami) Inc., et al.**
             **Civ. No. 05-5197 WJM**

Dear Counsel:

This matter comes before the Court on Defendant Sea Byte Inc.'s ("Sea Byte") motion to

Dockets.Justia.com

dismiss Plaintiff Hudson Marine Management Services, Inc.'s ("Hudson Marine") complaint for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this case to the Southern District of Florida.  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, Sea Byte's motion to dismiss for lack of personal jurisdiction is **GRANTED**.  Accordingly, Hudson Marine's complaint against Sea Byte is **DISMISSED**.

### Background

On March 26, 2004, a Greek vessel, the "M/V Eastwind," grounded on a reef off the shore of Ft. Lauderdale, Florida.  (Compl. ¶ 6).  Defendants Thomas Miller (Miami) Inc. and Thomas Miller P&I, Ltd. (together, "Thomas Miller") managed the vessel's insurer, the United Kingdom Mutual Steamship Assurance Association (Bermuda) Limited.  (*Id.* ¶ 7).  On the date of the grounding, Thomas Miller hired Hudson Marine, a New Jersey corporation with its principal place of business in New Jersey, to restore the reef and the surrounding marine environment (the "Project").  (*Id.* ¶¶ 1, 8; Affidavit of Cynthia Hudson ¶ 2 [*hereinafter* "Hudson Aff."]).  Hudson Marine subcontracted the diving work on the Project to Sea Byte, a Florida corporation with its principal place of business in Florida.  (*See* Compl. ¶¶ 4, 11; Affidavit of Richard A. Shaul ¶ 1[*hereinafter* "Shaul Aff.]).  Hudson Marine and Sea Byte eventually memorialized their relationship in a written "Memorandum of Agreement" ("MoA") dated August 24, 2004.  (Hudson Aff. Ex. B).

Sea Byte began working on the Project on April 3, 2004.  (Hudson Aff. ¶ 4; Compl. ¶ 12).  In September 2004, two hurricanes hit the reef, apparently causing substantial damage to the site.  (*See* Compl. ¶ 18).  When Hudson Marine and Sea Byte assessed the damage, they determined that the Project's cost had increased by $2.1 million.  (*Id.* at ¶ 20).  An estimate of the increase was prepared and presented to Thomas Miller, who flatly reject it.  (*See id.* ¶ 20).  Thereafter, Hudson Marine and Sea Byte continued working on the Project through October 31, 2004.  In the meantime, Hudson Marine continued negotiations with Thomas Miller regarding the increased costs.  (*Id.* ¶ 21).

No agreement was ever reached and, as a result, Hudson Marine commenced suit against Thomas Miller on October 26, 2005 seeking $1,870,900 plus interest for work performed on the Project.  (*See id.* ¶¶ 34-40).  In addition, Hudson Marine instituted a declaratory judgment action against Sea Byte, seeking a determination of the amount owed to the company should the Court determine that Hudson Marine is not entitled to full recovery.  Sea Byte now moves to dismiss the declaratory judgment action under Fed. R. Civ. P. 12(b)(2) and (3) for lack of personal jurisdiction and improper venue.  Sea Byte also moves, in the alternative, to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

### Discussion

**I.      Personal Jurisdiction**

**A.     Standard for Asserting Personal Jurisdiction Over a Non-Resident Defendant.**

To assert personal jurisdiction over a non-resident defendant, the plaintiff must show that the defendant had minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Personal jurisdiction arises when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In other words, the defendant must have engaged in some purposeful conduct within the forum "such that he should reasonably anticipate being haled into court there." *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). To demonstrate such conduct, "the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984)). Since Hudson Marine does not assert that this Court has general jurisdiction over Sea Byte (*see* Hudson Marine Opp. Br. at 9, n.3), the Court will only determine whether specific jurisdiction exists.[1]

**B.     Sea Byte Lacks Minimum Contacts With New Jersey.**

This is essentially a contract dispute between Hudson Marine and Sea Byte. In the present case, Hudson Marine is seeking a declaration from this Court as to the amount it owes to Sea Byte under the MoA. We note at the outset that Sea Byte's entering into the MoA with Hudson Marine, a New Jersey corporation, "does not automatically establish sufficient minimum contacts in [New Jersey]" *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). There must be something more. To find this "something more," the Court must also look "to prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing...." *Burger King.*, 471 U.S. at 479.

Hudson Marine essentially makes four arguments in favor of its contention that personal jurisdiction exists over Sea Byte. They are: (1) the MoA states that Sea Byte signed it in Cherry Hill, New Jersey; (2) Sea Byte's president, Richard Shaul ("Shaul") traveled to New Jersey twice; (3) Shaul and other Sea Byte employees communicated with Hudson Marine at least thirty-three times from May 3, 2004 to April 18, 2005; and (4) Sea Byte worked previously for

---

[1]Furthermore, the Court notes that Hudson Marine has the burden of establishing that personal jurisdiction exists. *Mellon Bank (East) PSFS , Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). As such, Hudson Marine must come forth with actual proof, not mere allegations. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990).

Hudson Marine on three occasions dating back to 1996.  The Court will address these arguments in turn.

Hudson Marine's first argument – *i.e.*, that the MoA states that Sea Byte executed it in New Jersey – is unavailing.  While the Court notes that the MoA states, above the parties' signatures, that it was executed in Cherry Hill, New Jersey, Sea Byte disputes this point.  (*See* Hudson Aff. Ex. B; Sea Byte's ¶ 2).  In fact, Sea Byte argues that it never once stepped foot in New Jersey to execute the agreement, and that the reference to Cherry Hill, New Jersey only indicates where the MoA was drafted.  Furthermore, Hudson Marine comes forth with no proof, or even any allegation beyond what is written in the MoA, that Sea Byte ever stepped foot in New Jersey to execute the agreement.  As such, the Court is compelled to give little weight to the contents of the MoA regarding its place of execution.

Hudson Marine's second argument, regarding Shaul's two visits to New Jersey, is also unavailing.  While such visits are usually important to questions of personal jurisdiction, *see Carteret v. Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992), they are less so here.  In particular, there is a dispute as to the reason why Shaul visited New Jersey.  Hudson Marine alleges that Shaul traveled to New Jersey specifically to negotiate the MoA, while Shaul claims that Hudson Marine asked him to enter New Jersey to discuss outstanding payments and to meet a new employee who was planning to travel to Florida.  (Hudson Aff. ¶ 11-12; Sea Byte's Reply Br. ¶ 5).  The Court, therefore, has difficulty determining whether Shaul's visits to New Jersey were acts purposefully directed at the state, or whether he was pulled into New Jersey to discuss issues unrelated to the MoA.  Accordingly, the Court cannot hold that this fact benefits Hudson Marine.

Hudson Marine's third argument – *i.e.*, that Sea Byte's thirty-three communications with it from May 3, 2004, to April 18, 2005 is further proof of Sea Byte's contacts with New Jersey – is likewise unavailing.  It is well-established that "informal communications in furtherance of [a contract between a resident and a nonresident] do not establish purposeful activity necessary for a valid assertion of personal jurisdiction over [a non-resident defendant]."  *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993).  That Sea Byte was merely performing its duties under the MoA and its subcontracting relationship with Hudson Marine by communicating with Hudson Marine does not establish that Sea Byte was purposefully directing its activities towards New Jersey.

Finally, Hudson Marine's fourth argument, regarding it's longstanding relationship with Sea Byte dating back to 1996, is irrelevant.  *See, e.g., Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1995) ("*Burger King*'s reference to 'prior negotiations,' 'future consequences,' 'terms of contract,' and 'course of dealing,' however, clearly contemplates dealings between the parties in regard to the disputed contract, *not dealings unrelated to the cause of action*.") (emphasis added).  Therefore, this fact is of little help to

Hudson Marine.[2]

In sum, the Court holds that Sea Byte does not have the requisite minimum contacts with New Jersey to establish personal jurisdicition. Therefore, the Court need not examine whether exercising jurisdiction over Sea Byte would offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987). However, the Court notes that it appears that haling Sea Byte into this Court might offend such notions of fair play and substantial justice. For instance, the entirety of Sea Byte's obligations under the MoA were in Florida. The vessel and reef were located there, and Sea Byte had no obligation to perform any act in New Jersey. To borrow from Sea Byte's own words, it "did not anticipate and could not have anticipated that an agreement with a company licensed to do business in Florida, to perform services in its home State of Florida, in waters which are Florida waters, and to repair Florida's reefs, would subject it to 'being haled into court' in the State of New Jersey." (Sea Byte's Br. at 11). Furthermore, it appears that all documentation, witnesses and evidence concerning Sea Byte's work under the MoA are located in Florida. Finally, Sea Byte has never been licensed or authorized to do business in New Jersey, has no employees or agents located in New Jersey, and has never advertised or otherwise solicited business in the state. These facts are a strong indication that haling Sea Byte into this Court would offend traditional notions of fair play and substantial justice.

## II.     Venue

Since the Court will dismiss Hudson Marine's complaint against Sea Byte for lack of personal jurisdiction, the Court need not reach the issue of whether venue is proper or whether the matter should be transferred to the Southern District of Florida.

## Conclusion

For the foregoing reasons, Sea Byte's motion to dismiss Hudson Marine's complaint is **GRANTED** and Hudson Marine's complaint as to Sea Byte is **DISMISSED**. An appropriate Order accompanies this Letter Opinion.

s/ William J. Martini<br>
**William J. Martini, U.S.D.J.**

cc: The Honorable Ronald J. Hedges, U.S.M.J.

---

[2]Other factors also weigh against a finding of personal jurisdiction here. (*See* Shaul Aff. ¶ 12). For instance, Sea Byte apparently did not solicit the subcontracting relationship with Hudson Marine. *See, e.g., Mellon Bank*, 960 F.2d at 1221-1222 (holding that defendants who approached plaintiff purposefully availed themselves of conducting business within the forum state). By all accounts, Hudson Marine first contacted Sea Byte about the Project. Furthermore, the MoA did not require Sea Byte to perform any work in New Jersey. (*See* Hudson Aff. Ex. A).