**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
           **JUDGE**

July 13, 2006

Edward V. Cattell, Jr.
Hollstein, Keating, Cattell, Johnson & Goldstein, P.C.
Willow Ridge Executive Office Park
750 Route 73 South
Sute 301
Marlton, NJ 08053
(*Attorney for Plaintiff Hudson Marine Mgmt. Servs.*)

Jack A. Greenbaum
Healy & Baillie, LLP
61 Broadway
32nd Floor
New York, NY 10006-2701
(*Attorneys for Defendants Thomas Miller (Miami) Inc. and Thomas Miller P&L Ltd.*)

Steven Lawrence Menaker
Chasan, Leyner, Bariso & Lamparello, P.C.
300 Harmon Meadow Boulevard
Secaucus, NJ 07094
(*Attorney for Defendant Sea Byte, Inc.*)

      **RE:**    Hudson Marine Mgmt. Servs., Inc. v. Thomas Miller (Miami) Inc., et al.
              <u>Civ. No. 05-5197 WJM</u>

Dear Counsel:

     Presently before the Court is plaintiff Hudson Marine Management Services Inc. ("Hudson Marine") and defendant Sea Byte, Inc.'s ("Sea Byte") request to transfer this matter to the Southern District of Florida. Defendants Thomas Miller (Miami) Inc. and Thomas Miller P&L Ltd. (together "Thomas Miller") oppose their request. For the following reasons, the Court

1

will transfer this matter to the Southern District of Florida.  However, the Court shall also take this opportunity to correct certain errors contained in its previous opinion in this matter.

## BACKGROUND

On March 26, 2004, a Greek vessel named the M/V Eastwind grounded on a reef of the shore of Ft. Lauderdale, Florida.  Thomas Miller, the companies that managed the vessel's insurer, hired Hudson Marine, a New Jersey corporation, to restore the reef (the "Project").  Hudson Marine then subcontracted the diving work on the Project to Sea Byte, a Florida corporation.  A dispute later arose between Hudson Marine and Thomas Miller over amounts owed.  As a result, Hudson Marine sued Thomas Miller in this Court, and Thomas Miller filed a counterclaim.  In the same action, Hudson Marine sued Sea Byte for declaratory relief, asking the Court to determine the amount it owes to Sea Byte should the Court find Thomas Miller not liable to Hudson Marine.

Sea Byte previously moved to dismiss Hudson Marine's declaratory action for lack of personal jurisdiction and improper venue.  In addition, Sea Byte moved in the alternative to transfer this matter to the Southern District of Florida.  In an opinion dated April 20, 2006, the Court dismissed Hudson Marine's complaint against Sea Byte for lack of personal jurisdiction.  *Hudson Marine Mgmt. Servs. Inc. v. Thomas Miller (Miami) Inc.*, No. 05-5197, 2006 U.S. Dist. LEXIS 21623 (D.N.J. Apr. 20, 2006).  Specifically, the Court held that Sea Byte lacked the minimum contacts with New Jersey necessary for personal jurisdiction.  *Id.*  The Court, though, did not reach the issues of improper venue or transfer.  *Id.* at *11.

Hudson Marine then moved for reconsideration of the Court's opinion or, alternatively, to transfer this matter to the Southern District of Florida.  Before the Court issued a ruling on this motion, however, Hudson Marine withdrew it.  Sea Byte then agreed to set aside our previous dismissal for lack of personal jurisdiction, and consented to the transferring of this matter to the Southern District of Florida.  Thomas Miller, though, opposes this transfer.

Hudson Marine and Sea Byte's request to transfer this case to the Southern District of Florida is now before the Court.  As mentioned earlier, the Court will grant this request but will also take this opportunity to correct an error in its previous opinion.

## DISCUSSION

**I.     Hudson Marine and Sea Byte's Request to Transfer this Matter to the Southern District of Florida is Granted.**

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfers pursuant to § 1404(a) may not be made simply by stipulation; rather, the Court must engage in the requisite independent balancing of the § 1404(a)

factors. *White v. Abco Eng'g Corp.*, 199 F.3d 140, 142 (3d Cir. 1999). Therefore, the Court must consider all relevant factors to determine whether, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by transfer to a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In this regard, the Court examines both the private interests of the litigants and factors of public interest. *Id.* at 879. Relevant private interests include the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, the possibility of a jury view of the premises, the location of books and records to the extent they may be unavailable in one forum, and whether the claim arose elsewhere. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946); *Jumara*, 55 F.3d at 879. The public interests may include enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administration difficulty in the two fora resulting from court congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879-80. The Court has broad discretion in determining whether transfer is appropriate. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).

Here, the public and private interests clearly favor transfer. The location of the claims, the convenience of the witnesses and parties, various practical considerations, and the public interest all weigh in favor of transferring this matter to Florida.

### A.     Location of the Claims

In this matter, Hudson Marine is suing Thomas Miller for breach of contract, unjust enrichment, and quantum meruit. (Compl. ¶¶ 34-40). These claims all arise out of Thomas Miller's alleged failure to pay Hudson Marine for work it performed on the Project. (*See id.* ¶¶ 29-30). Furthermore, Thomas Miller is counter-suing Hudson Marine for breach of contract stemming from Hudson Marine's purported overcharging for work performed on the Project, its failure to obtain government licenses relating to the Project, and its delay in performing work on the Project. (*See id.* ¶¶ 54-62). Therefore, putting aside Hudson Marine's declaratory action against Sea Byte, this case is essentially a breach of contract dispute between Hudson Marine and Thomas Miller for work performed in Florida.

A claim for breach of contract arises at the place of performance of the contract. *See, e.g., E.E. Cruz & Co. v. Alufab, Inc.*, No. 06-262, 2006 U.S. Dist. LEXIS 29706, at *16 (D.N.J. May 16, 2006). Here, the place of performance of the contracts was Florida, the site of the Project, and not New Jersey. Furthermore, while Hudson Marine's declaratory judgment action against Sea Byte does not involve a breach of contract, a substantial part of the events and operative facts in that action occurred in Florida, not New Jersey. In sum, the Court finds that very few, if any, of the operative facts giving rise to this litigation occurred in New Jersey. Therefore, this factor weighs in favor of transfer.

### B.     Convenience of the Witnesses and Location of Books and Records

Regarding the convenience of the witnesses and the location of documentary evidence, the Supreme Court has stated:

> To examine 'the relative ease of access to sources of proof' and the availability of witnesses, the District Court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The Court notes that "[t]he convenience of the witnesses is a particularly significant factor." *Euro Classics, Inc. v. Exel Global Logistics, Inc.*, 2006 U.S. Dist. LEXIS 29707. at *10 (D.N.J. May 16, 2006).

As mentioned before, this is essentially a contract dispute.  Nevertheless, while this case will involve interpreting the language, scope, and existence of the parties' agreements, it will also require more.  In particular, this case will most likely require the Court to determine the actual work performed by the defendants on the Project.  This is especially so in Hudson Marine's declaratory action against Sea Byte, where the Court will likely be required to examine the specific work performed by Sea Byte on the reef.  The development of these facts is more easily undertaken in Florida than in New Jersey.

This is further bolstered by the large amount of witnesses from Florida who will potentially testify in this case.  Of the forty-four individuals identified by the parties as potential witnesses in this case, thirty-four are from Florida. (*See* Affidavit of Cynthia Hudson ¶¶ 16-17; Affidavit of Richard A. Shaul at Ex. B; Declaration of John B. Kimball ¶¶ 5-8).  This fact weighs strongly in favor of transferring this matter to Florida.[1]

Furthermore, beyond the contracts at issue in this case, the Court fails to see what other documents are in New Jersey that might be dispositive to this action.  On the other hand, the Court can clearly foresee a large number of documents and records coming from Florida that will be vital to determining the amount of work performed by the parties.  Those documents might include not only correspondence and records regarding work performed, but also documents from Florida regulatory agencies regarding restoration of the reef.

---

[1]While some of Thomas Miller's potential witnesses are from England (*see* Declaration of John B. Kimball ¶¶ 5, 8), they will not be inconvenienced whether this litigation occurs in Florida or New Jersey.  *See, e.g., Ricoh Co. v. Honeywell, Inc.*, 87 F. Supp. 473, 484 (D.N.J. 1993).

4

### C.     Public Policy

While New Jersey courts clearly have an interest in seeing that contracts involving New Jersey corporations are enforced, this case concerns other, more important, interests. In particular, the Court is persuaded that Florida has a much stronger interest in seeing that insurers of vessels that navigate its waters, and the managers of those insurers, pay the companies they hire to restore the State's coral reefs and their fragile marine environment. This interest is particularly strong in cases involving environmental mishaps, where uncertainties in being paid for work performed to repair environmental damage will not only impact the contracting parties, but also the environment and the people of Florida. Thus, Florida's interest in this case is very strong.

### D.     Practical Considerations

Thomas Miller argues that the Court should sever this case, keeping the disputes between Hudson Marine and Thomas Miller in New Jersey, while sending Hudson Marine's declaratory action against Sea Byte to Florida. According to Thomas Miller, the actions are completely separate, and therefore it is unnecessary to transfer all of the actions. The Court disagrees. Clearly, the disputes all arise out of the same facts – i.e., the grounding of the M/V Eastwind in Florida. In particular, Thomas Miller's alleges that Hudson Marine overcharged for worked performed on the project. Because Sea Byte performed some, if not most, of that work, whether Hudson Marine overcharged Thomas Miller will depend on what work Sea Byte performed and whether Sea Byte's work met the parties' expectations. Therefore, the Cases are inextricably intertwined, and the underlying sources of proof on both cases are substantially the same. Furthermore, severance would unduly hamper Hudson Marine by requiring it to litigate two related cases in two distinct jurisdictions. Therefore, the Court will not sever the disputes.

\* \* \*

In light of these facts, the Court concludes that the burden of litigating this matter would clearly be lessened by transferring it to Florida. Furthermore, the factual underpinnings of this suit occurred almost entirely in Florida, not New Jersey. Had the M/V Eastwind crashed off the coast of Cape May or Point Pleasant, our holding might be different. But, this is not the case. The vessel grounded off the shore of Florida, and the facts necessary to determine the parties' respective obligations regarding the Project most likely reside in Florida. Furthermore, public policy favors transfer. Accordingly, Hudson Marine and Sea Byte's request to transfer this case to the Southern District of Florida is **GRANTED**.[2]

---

[2]Thomas Miller argues that Hudson Marine inappropriately raised the issue of transfer for the first time in its motion for reconsideration. This is incorrect. Hudson Marine's initial brief in opposition to Sea Byte's motion to dismiss expressly reserved the issue of transfer should the Court find personal jurisdiction over Sea Byte to be lacking. (Hudson Marine's Opp. Br. at 16 n.7). Thomas Miller, though, faults Hudson Marine for "burrying" this argument in a footnote,

5

## II.     The Court Erred in Holding that Sea Byte Lacked Minimum Contacts with New Jersey.

While the Court need not reach the issue of personal jurisdiction raised in our present decision, the Court will take this opportunity to amend our prior opinion on this matter.  In our previous opinion, we held that Sea Byte lacked the minimum contacts with New Jersey necessary to establish personal jurisdiction.  In making this decision, the Court assessed one of Sea Byte's purported contacts with the state: two visits by the president of Sea Byte ("Shaul") to New Jersey in July 2004.  Regarding this contact, the Court stated:

> Hudson Marine's second argument, regarding Shaul's two visits to New Jersey, is also unavailing.  While such visits are usually important to questions of personal jurisdiction, *see Carteret v. Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992), they are less so here.  In particular, there is a dispute as to the reason why Shaul visited New Jersey.  Hudson Marine alleges that Shaul traveled to New Jersey specifically to negotiate the [Memorandum of Agreement ("MoA")], while Shaul claims that Hudson Marine asked him to enter New Jersey to discuss outstanding payments and to meet a new employee who was planning to travel to Florida. (Hudson Aff. ¶ 11-12; Sea Byte's Reply Br. ¶ 5).  The Court, therefore, has difficulty determining whether Shaul's visits to New Jersey were acts purposefully directed at the state, or whether he was pulled into New Jersey to discuss issues unrelated to the MoA.  Accordingly, the Court cannot hold that this fact benefits Hudson Marine.

*Id.*, at *6-7.  In its motion for reconsideration, Hudson Marine argues that this analysis contained two errors: (1) the Court failed to resolve all factual disputes in Hudson Marine's favor; and (2) Shaul's motivation for entering New Jersey is irrelevant.  On both points, Hudson Marine is correct.  Therefore, the Court will take this opportunity to "set the record straight."

Regarding Hudson Marine's first argument, the Court erred by not accepting Hudson Marine's contention that Shaul visited New Jersey twice to negotiate the MoA.  *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1992) (noting that on a motion to dismiss for lack a personal jurisdiction, a court must resolve all factual disputes in favor of the non-moving party); *see also Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004) (same).  Regarding Hudson Maine's second argument, the Court also erred in placing weight on whether

---

and cites cases supporting its view that litigants should not bury critical arguments in footnotes.  The Court finds Thomas Miller's argument to be completely unavailing.  For one thing, this was clearly not a "critical argument" argument at the time – Hudson Marine was merely preserving an argument, which Thomas Miller has itself done on this case.  (*See, e.g.,* Thomas Miller's Opp. Br. at 2 n.1).

6

Hudson Marine "pulled" Shaul into New Jersey or whether he initiated contact with New Jersey on his own. Whether a person is pulled into a state is irrelevant in determining whether that person purposefully availed himself of conducting activities within that state. *See, e.g., Carteret Sav. Bank*, 954 F.2d at 150 ("We decline to attach significance to the defendants' allegation that [defendant] did not solicit [plaintiff]," as "the 'purposeful availment' necessary for due process purposes ... was met by [defendant's] act of traveling to New Jersey to consult with his client.... We also decline to adopt the defendants' position that personal jurisdiction should turn upon whether [plaintiff] invited [defendant] to the [New Jersey] meeting or [defendant] himself initiated that meeting since the operative fact is that [defendant] attended this meeting in New Jersey.").

Since the Court now accepts that Shaul traveled to New Jersey twice to negotiate the MoA, our holding that Sea Byte lacks minimum contacts with New Jersey was incorrect. While "[a] single or even occasional act related to the forum may not be sufficient to establish jurisdiction if the acts create only an attenuated affiliation with the forum." *George Young Co. v. Bury Bros., Inc.*, No. 03-3353, 2004 U.S. Dist. LEXIS 8985, at *13 (E.D. Pa. Apr. 1, 2004) (citing *Burger King*, 471 U.S. at 475 n.18), many courts recognize "[t]he importance of visits to the forum state to negotiate a contract underlying the suit" when deciding questions of personal jurisdiction. *Western Union Tel. Co. v. T.S.I., Ltd.*, 545 F. Supp. 329, 335 (D.N.J. 1982) (citations omitted). In fact, "contract negotiations with forum residents ' can empower a court to exercise personal jurisdiction over persons outside the forum.'" *Fiscus v. Combus Fin. AG*, 03-1328, 2006 U.S. Dist. LEXIS 41016, at *14 (D.N.J. June 20, 2006) (quoting *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476 (3d Cir. 1993)); *see also George Young Co.*, 2004 U.S. Dist. LEXIS 8985, at *13 (citations omitted). Furthermore, when visits are coupled with the defendant's use of interstate facilities, such as the mails or telephone, courts often find that personal jurisdiction exists. *See Carteret Sav. Bank*, 954 F.2d at 150 ("Coupled with ... telephone calls and letters to New Jersey, the attendance at [a New Jersey] meeting suffices to establish the minimum contacts necessary for specific jurisdiction."); *see also GMAC Real Estate LLC v. Gate City Real Estate Co.*, No. 05-2253, 2005 U.S. Dist. LEXIS 24531, at *10 (D.N.J. Oct. 18, 2005); *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1185 (D.N.J. 1992); *Eaton Corp. Maslym Holding Co.*, 929 F. Supp. 792, 797-98 (D.N.J. 1996).

Here, Shaul visited New Jersey twice to negotiate the MoA, which is the contract at dispute in the declaratory action. Furthermore, Hudson Marine avers that Shaul and other Sea Byte employees contacted Hudson Marine in New Jersey by email over thirty-three times between May 3, 2004 and April 18, 2005.[3] These communications were mainly, if not entirely,

---

[3]The Court notes that it discounted the significance of these email communications in its previous opinion. The situation, however, has changed. It is well-settled that "minimal communication between the defendant and the plaintiff in the forum state, *without more*, will not subject the defendant to the jurisdiction of that state's court system." *IMO Indus. Inc. v. Kiekert AG*, 155 F.3d 254, 259 n. 3 (3d Cir. 1998) (emphasis added). With today's reconsideration of the Court's previous Opinion, we received that "something more" in the form of Shaul's two visits

in furtherance of Sea Byte's contractual relationship with Hudson Marine. (Affidavit of Cynthia Hudson ¶¶ 7-9 [*hereinafter* "Hudson Aff."]). Other courts have found minimum contacts to exist with far fewer communications. *See, e.g., Grand Entm't Group*, 988 F.2d at 482-83 (holding that twelve telephone calls into New Jersey, coupled with negotiations for an agreement that would have created rights and obligations among citizens of New Jersey, provided the minimum contacts necessary to satisfy due process). Furthermore, Sea Byte sent invoices to Hudson Marine in New Jersey for work it performed. (Hudson Aff. ¶ 10). These facts, coupled with Shaul's two visits, are sufficient to establish the minimum contacts necessary to exercise personal jurisdiction over Sea Byte.

Accordingly, the Court erred in holding that Sea Byte lacked minimum contacts with New Jersey. Therefore, the Court vacates its previous opinion in this regard.

## CONCLUSION

For the forgoing reasons, Hudson Marine and Sea Byte's request to transfer this matter to the Southern District of Florida is **GRANTED**. An appropriate Order accompanies this Letter Opinion.

s/ William J. Martini  
**William J. Martini, U.S.D.J.**

cc: The Honorable Ronald J. Hedges, U.S.M.J.

---

to New Jersey to negotiate the MoA. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696 700-01 (3d Cir. 1990) (noting that mail and telephone communications sent by the defendant into the forum may count towards the minimum contacts that support jurisdiction); *Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1455 (D.N.J. 1984).